## Walton v. American Investment Co., Receiver.

(Decided November 2, 1910.)

### Appeal from Fayette Circuit Court.

Assignee—Holding Trust Funds—Attorney for Company—Unequal Distribution—Favoring Himself.—The trustee of an investment company will not be allowed to hold the funds of the company in his hands, as assignee, to pay himself for his services as trustee and as attorney for the company, and thereby acquire an advantage over other creditors of the company where the purpose of the trust was to protect the fund from the company's creditors.

FORMAN & FORMAN and T. T. FORMAN for appellant.

THORNTON & JOHNSTON, R. A. THORNTON, JOHN R. ALLEN and CHARLES KERR for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

On February 19, 1902, the president of the American Investment Company was out of the state, and its business was conducted by the vice president and secretary. They placed in the hands of Mat Walton $10,940 of the company's money, under an agreement then made with him that he was to deposit it in the Phoenix National Bank of Lexington, and that they were to give checks on the bank in settlement of the coupons and general expenses of the company without actually having any money to the credit of the company in the bank; but when certain amounts were paid out by way of over-

draft he was to make the overdraft good by his check as trustee on the $10,940; it being agreed that he should receive a fair and reasonable compensation for his services. The reason the arrangement was made was that the vice president and secretary feared that the fund would be attached by dissatisfied holders of coupons if it remained in the bank to the credit of the company; and so it was placed in Walton's hands to keep it intact and to protect it from attachment. A number of checks were drawn by the company, and on March 1, Walton made the overdraft good by his check for $7,500. On March 12, he made another check for $2,400 to cover an overdraft up to that time. On the same day he rendered an account to the company for $300, and drew a check payable to himself for this amount. On March 14, the company made an assignment for the benefit of its creditors to Joe S. Botts. Walton then tendered to Botts as assignee a check for $740, being the balance left in his hands. Botts declined to accept the check for $740, insisting that Walton should pay him $1,040, being the balance of the fund in his hands after deducting the $9,000, which he had paid out on the overdrafts. Walton declined to pay the $1,040, and this litigation ensued, the facts being submitted to the circuit court on practically an agreed case. The court adjudged Walton to pay Botts $1,040. Walton appeals.

The thing in controversy is $300, the sum which Walton paid himself out of the trust fund; one-half of it being for his commissions as trustee, and the remainder for services he had rendered the investment company as its attorney. The circuit court held that he was entitled to no compensation as trustee, and that for his services as attorney for the investment company he must present his claim to the trustee under the deed of assignment, and come in as any other creditor.

The purpose of placing the $10,400 in Walton's hands was to prevent its being attached by the creditors of the investment company. There appears to have been no intention to do more than simply to pay off the coupons of the company as they matured and to prevent some creditors from getting an advantage over others or interrupting the company in its transactions. But the law does not countenance such arrangements. Any transaction which covers up the property of the debtor and is made for the purpose of shielding the property from the process of the law is illegal. The court will not allow

a trustee who holds money for such purposes to take anything out of the fund for his services, The arrangement being illegal his services are not recognized by law, and where services are not recognized by law no compensation can legally be made for them.

We do not doubt that the investment company may be indebted to Walton as its attorney for previous services rendered, but he cannot be allowed to obtain the money of the company by an arrangement which the law forbids, and then insist on holding out of the fund a sum sufficient to pay him for such services. The money was not placed in his hands to secure him. The company made an assignment only two days after the check for $300 was given. The court cannot allow a trust of this sort to be made the vehicle by means of which the trustee acquires an advantage over other creditors. The arrangement being illegal the court will require the trustee to put the balance of the fund remaining in his hands back where it was taken from. It is a maxim of the law that a man shall not profit by his own wrong, and while we are satisfied the attorney intended no wrong, it was a legal wrong and he cannot be allowed to be placed in a better position by his own wrong than he was before.

Walton may prove his claim for professional services rendered against the company, and will not be affected as to them by this proceeding. The chancellor properly so adjudged. The assignee does not stand in the shoes of the investment company, but has all the rights of a creditor as to fraudulent transfers. Section 84, Ky. Stat., provides:

"If the assignor, before making the deed, shall have made a preferential or fraudulent transfer, conveyance or gift of any of his property, or a fraudulent purchase of any property in the name of another, the property so fraudulently transferred, conveyed or purchased shall vest in the assignee, and it shall be his duty to institute such proceedings as may be necessary to recover the property so conveyed or disposed of, and to this end he shall have the remedies which the creditors or any of them might exercise. If the assignee, upon demand, shall refuse to institute such proceedings, any creditor may do so, and property so recovered shall become a part of the estate and be distributed as other assets."

The chancellor followed the statute.

Judgment affirmed.